UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13CV-00121-HBB

JOANNA L. AVERY  PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security  DEFENDANT

# MEMORANDUM OPINION AND ORDER

## BACKGROUND

Before the Court is the complaint (DN 1) of Joanna L. Avery ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit of Appeals in the event an appeal is filed (DN 15). By order entered November 15, 2013, the parties were notified that oral arguments would be held unless a written request therefor was filed and granted (DN 14). No such request was filed.

## FINDINGS OF FACT

Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits on March 29, 2010 (Tr. 226, 401-402). Plaintiff alleged that she became disabled on March 1, 2003 as a result of bone deterioration in hips and pelvis, and anxiety and depression (Tr. 409-410). These claims were denied initially on August 18, 2010, and upon reconsideration on November 30, 2010 (Tr. 226). Thereafter, Plaintiff filed a written request for a hearing on January 28, 2011 (Tr. 226). Plaintiff then amended her disability onset date to December 31, 2009 (Tr. 226). On November 16, 2011, Administrative Law Judge Hortensia Haaversen ("ALJ") conducted a video hearing from Baltimore, Maryland (Tr. 226). Plaintiff appeared in Bowling Green and was presented by Mary G. Burchett-Bower, an attorney (Tr. 226). Also present and testifying was Leah P. Salyers, an impartial vocational expert (Tr. 226).

In a decision dated February 6, 2012, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 226-236). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2009, the alleged onset date (Tr. 228). At the second step, the ALJ determined that Plaintiff's major depressive disorder, pain disorder, anxiety disorder, occipital neuralgia, right cervical and thoracic facet arthritis, and right subacromial bursitis are "severe" impairments within the meaning of the regulations (Tr. 228). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 229).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the Plaintiff ambulates

with a cane; can understand, remember and carry out simple repetitive instructions and tasks; is able to tolerate stress and pressure of day-to-day employment but should be limited to only low stress job defined as only occasional decision making and occasional changes in a work setting; is able to sustain attention and concentration towards the performance of simple repetitive tasks; and she is able to respond appropriately to supervision, coworkers and work pressures of a low stress job as previously defined (Tr. 230). The ALJ further noted that her residual functional capacity determination was based on the consultative examiner's opinion and the cane use demonstrated at the hearing (Tr. 230). The ALJ also concluded that Plaintiff has no past relevant work because there is no indication that any of her prior jobs were performed at a substantial gainful activity level (Tr. 234).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 234-236). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 235). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 31, 2009, through February 6, 2012, the date of the administrative decision.

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term

"disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (*quoting* Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (*quoting* Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

**Residual Functional Capacity Determination**

Here, Plaintiff challenges the ALJ's Finding No. 5, which addresses the fourth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 16, Plaintiff's Fact

and Law Summary at Pages 2-5).[1] With regard to Finding No. 5, the ALJ made the following conclusion:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant ambulates with a cane; can understand, remember and carry out simple repetitive instructions and tasks; is able to tolerate stress and pressure of day-to-day employment but should be limited to only low stress job defined as only occasional decision making and occasional changes in a work setting; is able to sustain attention and concentration towards the performance of simple repetitive tasks; and she is able to respond appropriately to supervision, coworkers and work pressures of a low stress job as previously defined (Based on the consultative examiner's opinion at Exhibit 3F and the cane use demonstrated at the hearing).

(Tr. 230).

Plaintiff argues that Finding No. 5 is not supported by substantial evidence because the ALJ failed to properly address restrictions stemming from Plaintiff's "severe" physical impairments (DN 16, Plaintiff's Fact and Law Summary at Pages 2-3). Plaintiff points out that the ALJ's residual functional capacity assessment only contains a physical restriction regarding ambulating with a cane and the limitation of light work activity (DN 16, Plaintiff's Fact and Law Summary at Pages 2-3).

---

[1] At the fourth step of the sequential evaluation process, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. See 20 C.F.R. § 416.920(e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. This finding is based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record as well as consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 416.927(c), 416.929; Social Security Ruling 96-7p.

In essence, Plaintiff points out that the ALJ indicates that Plaintiff has "severe" physical impairments, but fails to identify specific physical restrictions resulting and therefore, remand is necessary for clarification of restrictions resulting from the "severe" impairments (DN 16, Plaintiff's Fact and Law Summary at Page 3). Plaintiff does not make any arguments with regard to the mental limitations assessed in the ALJ's residual functional capacity finding (DN 16, Plaintiff's Fact and Law Summary at Pages 2-5). In opposition, the Defendant asserts that Finding No. 5 is supported by substantial evidence, because the ALJ properly determined Plaintiff's physical limitations and residual functional capacity in light of the record as a whole (DN 19, Defendant's Fact and Law Summary at Page 4).

The residual functional capacity finding is the ALJ's ultimate determination of what Plaintiff can still do despite her physical and mental limitations. *See* 20 C.F.R. §§ 416.945(a), 416.946. The ALJ bases her residual functional capacity finding on a review of the record as a whole, including Plaintiff's credible testimony and the opinion from the claimant's medical sources. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Contrary to Plaintiff's assertion, the ALJ properly considered the record as a whole and acknowledged Plaintiff's physical limitations in determining the residual functional capacity (Tr. 230-234).

Plaintiff argues that the ALJ erred by including only the need for a cane in her restrictions relating to her physical impairments (DN 16, Plaintiff's Fact and Law Summary at Pages 2-3). Here, the ALJ found that Plaintiff has the following severe physical impairments: occipital neuralgia, right cervical and thoracic facet arthritis, and right subacromial bursitis (Tr. 228). The ALJ further found that Plaintiff requires the use of a cane in light of the medical evidence in the record (Tr. 230-234). However, the ALJ did not find that Plaintiff's physical impairments limit her ability to perform work

7

in any way, because the evidence as a whole simply did not support further limitations (Tr. 230-234). Here, the ALJ thoroughly explained the medical evidence and how it relates to the limitations imposed by the ALJ. With regard to Plaintiff's physical impairments, the ALJ noted as follows:

> The evidence pertaining to the claimant's claims of physical impairment does not add much to the claimant's disability claim. The claimant reported being in good health and having no significant medical history just six months prior to her alleged onset date of disability (Ex. 7F at 3). The record shows that the claimant sought medical treatment for her neck pain once in 2009 (Ex. 2F at 9). In 2010, she sought medical treatment more frequently, but the medical treatment records from 2010 consist entirely of her office visitation records from her primary medical care provider (Ex. 2F at 18-24, Ex. 8F, Ex. 18F at 26-34). The visitation notes cover a wide range of problems, including but not limited to osteopenia, earache, hip pains, leg pains, snoring, facial numbness, headache, a tinging sensation in the arms and hands, hyperlipidemia, but there is simply insufficient indication that the limiting effects of these impairments, singly or in combination have disabled her. There is not even sufficient evidence to find these impairments to be severe within the meaning of the Social Security regulations.

(Tr. 232). Furthermore, the ALJ recognized the treatment notes from Kywa Htin, M.D., Plaintiff's pain management physician (Tr. 232). The ALJ summarized Dr. Htin's medical evidence as follows:

> In 2011, the claimant began seeking pain management treatment primarily for her neck related pains. In February and April Kywa Htin, M.D., the claimant's pain management doctor, diagnosed the claimant with occipital, neuralgia, right cervical and thoracic facet arthritis, and right subacromial bursitis, and she received a series of injections for pain relief in her neck and her right shoulder in the months following (Ex. 12F, Ex. 13F, Ex. 20F). The pain block injection treatment notes show that these injections have given her significant pain relief. In August, the claimant reported having experienced a 70% improvement since her June injection treatment (Ex. 20F at 23). In September, the claimant again reported obtaining a 70% improvement from the August injection treatment (Ex. 20F at 12). In September, Dr. Htin reported that the claimant obtained pain relief after the injection treatment and that she was discharged from

8

> his office in a satisfactory condition, without complications or side effects (Ex. 20F at 13). Furthermore, there is little by way of objective medical signs to indicate that her pains are as bad as she claims. The results of the cervical MRI study from January 5, 2011 revealed no remarkable findings what so ever. The claimant was found to have no disc herniation, no spinal canal or foraminal compromise (Ex. 19F at 10, Ex. 12F at 32). Further, there are several indications in the treatment records to show that the claimant did not show any sensory deficits and that she demonstrated normal motor power bilaterally in her upper extremities (Ex. 12F at 3, 16, 32, Ex. 13F at 3, 17)

(Tr. 232-233). In addition, the ALJ explained that the state agency medical consultant found Plaintiff's physical impairments to be nonsevere based on the lack of sufficient [...] medical evidence and issued no physical residual functional capacity assessment (Ex. 5A, Ex. 6A) (Tr. 233) (internal citations omitted). In light of the foregoing evidence, it is clear that the ALJ did not err in only including the use of a cane in Plaintiff's residual functional capacity regarding physical limitations. As a result, this finding is supported by substantial evidence and comports with applicable law.

Next, Plaintiff argues that the ALJ failed to give proper consideration to the medical opinion of Plaintiff's treating pain management physician, Kywa Htin, M.D. (DN 16, Plaintiff's Fact and Law Summary at Pages 3-5). More specifically, Plaintiff asserts that the ALJ rejected Dr. Htin's assessment of limitations without clearly explaining the weight afforded to Dr. Htin's assessment (DN 16, Plaintiff's Fact and Law Summary at Page 4). Plaintiff maintains that remand is necessary for explanation of the weight afforded to the medical opinion of Dr. Htin (DN 16, Plaintiff's Fact and law Summary at Page 4). In opposition, the Defendant argues that the ALJ addressed Dr. Htin's opinion and articulated specific reasons for why she could not afford great significance to Dr. Htin's assessment (DN 19, Defendant's Fact and Law Summary at Page 7).

9

While the regulations require Administrative Law Judges to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(d), 416.927(d). Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p; Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993); Crouch v. Sec'y of Health and Human Servs., 909 F.2d 852, 857 (6th Cir. 1990). Notably, if the medical opinion of a treating source is found not to be entitled to controlling weight then the Administrative Law Judge must determine how much weight it should be accorded and set forth in the administrative decision good reasons for the weight given to that medical opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p; *see* Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545-46 (6th Cir. 2004) (if an Administrative law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so).

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365 (6th Cir .2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating source is not deemed controlling. 20 C.F.R. §§ 404.1527(c), 416.927(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Here, it is clear that Dr. Htin is Plaintiff's treating physician and as a result he is entitled to controlling weight unless otherwise noted. On January 3, 2012, Dr. Htin completed a residual functional capacity assessment form (Tr. 767-68). The ALJ recognized this assessment and summarized Dr. Htin's findings as follows:

> On this form, Dr. Htin indicated by way of checking off boxes that the claimant can stand or sit for less than 2 hours in an 8-hour workday and that she can only lift less than 10 pounds occasionally. He further indicated that the claimant is restricted in her ability to climb, balance, twist, turn, stoop, bend, reach and handle. As for the claimant's ability to use her hands, the doctor indicated that she can only occasionally perform simple grasping and fine manipulation activities and that she can only rarely perform push and pull activities. He also imposed all environmental limitations listed in the form and further noted that she is expected to be absent from work 5 or more days in a given month (Ex. 21F).

(Tr. 233). Further, the ALJ's explanation for the weight assigned to Dr. Htin's assessment reads as follows:

> Dr. Htin's assessment, however, does not provide any explanation as to why the claimant is as limited as he believes. He did not even provide the underlying medical conditions to which the limitations could be attributed in the form. Given that the claimant did not submit any additional evidence alongside Dr. Htin's assessment showing that her physical condition worsened as Dr. Htin noted in the form since her disability hearing in November 2011, the undersigned is not willing to put great significance on a form assessment that provides no basis for the limitations assessed. Under the Social Security regulation, a functional capacity assessment from a treating source receives favorable treatment, but the assessment must still be supported by medical evidence and not inconsistent with the other substantial evidence in the record.

(Tr. 233-34). While the ALJ's explanation is not extensive, she still asserts that Dr. Htin's assessment is not supported by the evidence because it is inconsistent with other evidence in the record. Also, Dr. Htin's own treatment notes do not support the January 3, 2012 assessment.

11

During her treatment with Dr. Htin, he noted that she received pain block injections and that she increased significant improvements in her neck pains (Tr. 232-233). Moreover, there is no medical objective evidence to support the January 3, 2012 assessment (Tr. 232-233). Therefore, the ALJ's Finding No. 5 is supported by substantial evidence and comports with applicable law.

**Other Significant Work in the National Economy**

Next, Plaintiff alleges ALJ's Finding No. 10, which addresses the fifth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 16, Plaintiff's Fact and Law Summary at Page 6). After considering Plaintiff's age, education, work experience, and residual functional capacity, including testimony from the vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform as explained in 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a) (Tr. 234-236). More specifically, the ALJ found that Plaintiff is capable of performing the requirements of the following unskilled, light exertional level work with a specific vocation preparation rating ("SVP") of a 2: a laundry worker, a product inspector, and a document scanner (Tr. 235). Further, the ALJ concluded, in light of the vocational expert's testimony, even if the above residual functional capacity were reduced to a sedentary exertional level, there still would be a significant number of work that Plaintiff could perform (Tr. 235). The ALJ noted that at the sedentary level the following jobs would be available: a machine monitor, a production inspector, and a bench worker or hand finisher (Tr. 235-236).

Plaintiff argues that Finding No. 10 is not supported by substantial evidence, because of the reasons set forth under the challenge to Finding No. 5, specifically that the ALJ should have

12

afforded controlling weight to the medical opinion of Dr. Htin (DN 16, Plaintiff's Fact and Law Summary a Page 6). Further, Plaintiff argues that identification of jobs to a flawed hypothetical question is not substantial evidence to support a denial in the claim for benefits (DN 16, Plaintiff's Fact and Law Summary at Page 6). In response, the Defendant argues that Finding No. 10 is supported by substantial evidence, because the vocational expert's testimony provides substantial evidence that a person with Plaintiff's residual functional capacity could perform the jobs identified (DN 19, Defendant's Fact and Law Summary at Page 11).

At the fifth step, the burden of proof shifts to the Commissioner as explained below:

> The burden of proof in a claim of Social Security benefits is upon the claimant to show disability which prevents him from performing any substantial gainful employment for the statutory period. Once, however, a prima facia case that claimant cannot perform her usual work is made, the burden shifts to the [Commissioner] to show that there is work in the national economy which she can perform

.
Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980) (*citing* Hephner v. Matthews, 574 F.2d 359, 361 (6th Cir. 1978); Garrett v. Finch, 436 F.2d 15, 18 (6th Cir. 1970)). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his or her limitations. *See* Born v. Sec'y of Health and Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health and Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). In making a determination at the fifth step of the five-step sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Notably, a vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y of the Dep't of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as the vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments. Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. Hardaway v. Sec'y of Health and Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). Moreover, there is no requirement that the Administrative Law Judge's hypothetical question to the vocational expert reflect plaintiff's unsubstantiated complaints.

For reasons discussed above, Plaintiff failed to successfully challenge the ALJ's residual functional capacity finding. As mentioned earlier, the ALJ found that Plaintiff has the residual functional capacity to perform light work which is impeded by additional limitations (Tr. 230, 235). Because Plaintiff's residual functional capacity finding did not parallel the criteria of Medical Vocational Rule 202.17, the ALJ only used the medical vocational rules as a framework for decision-making (Tr. 235). To determine the extent to which these limitations erode the unskilled light occupational base, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity (Tr. 234-236). The vocational expert testified that given all of these factors Plaintiff would be able to perform the requirements of the following unskilled, light exertional level work with a specific vocation preparation rating ("SVP") of a 2: a laundry worker, a product inspector, and a document scanner (Tr. 235). Moreover, the ALJ did not find that Plaintiff's physical capacity has

been limited to a sedentary exertional level (Tr. 235). However, the ALJ noted that the vocational expert's testimony indicated that even if the above residual functional capacity were reduced to a sedentary exertional level, there still would be a significant number of work that she could perform including machine monitor, a production inspector, and a bench worker or hand finisher (Tr. 235-236).

Here, there is no merit to Plaintiff's argument. The vocational expert's testimony was based on a hypothetical question that accurately portrayed the Plaintiff's physical and mental impairments (Tr. 261-264). Therefore, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs existing in the national economy. Bradford v. Sec'y of Dep't of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam); Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). In sum, the ALJ's Finding No. 10 is supported by substantial evidence and comports with applicable law.

**General Disability Finding**

Lastly, with regard to Finding No. 11, Plaintiff makes a broad challenge to the ALJ's ruling that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 31, 2009, through February 6, 2012 (DN 16, Plaintiff's Fact and Law Summary at Page 6). Based on the analysis the undersigned has set forth with regard to Finding Nos. 5 and 10, the ALJ did not err in finding that Plaintiff has not been under a disability from December 31, 2009 through February 6, 2012. Because the undersigned concludes that Plaintiff's challenge to Finding Nos. 5 and 10 fails, Plaintiff's argument with regard to Finding No. 11 holds no merit. In sum, the

undersigned has reviewed the record and finds that the ALJ's determinations under Finding Nos. 5, 10, and 11 are supported by substantial evidence and fully comport with applicable law.

## **ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**, pursuant to 42 U.S.C. § 405(g).

This is a final and appealable Order and there is no just cause for delay.

Copies:      Counsel